Argued and submitted November 29, 2001, reversed and remanded July 10, 2002

In the Matter of
Logan Allen Mitchell and Keely Joe Mitchell,
Minor Children.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Logan Allen MITCHELL,
Keely Joe Mitchell,
and Lorna Boring,
*Respondents.*

98-01-22J, 98-01-21J; A112933

49 P3d 838

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Karen O'Casey, argued the cause for respondents. With her on the brief was Schwabe, Williamson & Wyatt, P.C., Court Appointed Special Advocates.

Karen S. Torry filed respondents' reply brief. With her on the brief was Juvenile Rights Project, Inc.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

Armstrong, J., concurring in part and dissenting in part.

_____

* Deits, C. J., *vice* Byers, S. J.

## EDMONDS, P. J.

This is an appeal by the State Office for Services to Children and Families (SCF) from a Clackamas County juvenile court order that requires SCF to provide the children's attorney and their court appointed special advocate (CASA) with copies of adoption home studies of 30 families interested in adopting the children. The trial court held, based on our recent opinion in *State ex rel SOSCF v. Williams,* 168 Or App 538, 7 P3d 655 (2000), *rev dismissed* 333 Or 596 (2002), that SCF was required to disclose the home studies of all families considered by SCF, regardless of whether it submitted those home studies for consideration by an adoption committee. We reverse.

The two children in this case have been legally freed for adoption through the termination of their biological parents' rights. The adoption worker responsible for finding adoptive homes for the children received home studies from 30 interested families. She engaged in an initial screening of those home studies and determined that there were two families that SCF would continue to consider for the children. *See* OAR 413-120-0040(2).[1] However, the SCF caseworker has not yet decided whether to submit either or both families to an adoption committee for selection of a family.

While SCF was reviewing the information submitted by the two families, the CASA for the children filed a motion to compel SCF to deliver copies to her of all adoption home studies that had been submitted to the worker. SCF opposed the motion. It argued that, in order to disclose any home studies, the court would have to engage in an analysis of how to protect the privacy interests of the potential adoptive families as balanced against the CASA's need for the information. Alternatively, it argued that it could be required, at most, to disclose only those home studies that were submitted to the adoption committee. SCF also

---

[1] OAR 413-120-0040(2) provides:

"When selecting families from completed home studies for committee, the child's worker shall review and select for presentation a sufficient number of appropriate families in the order the home studies have been date stamped by the Central Office Adoption Services Unit[.]"

informed the court that it had provided the CASA with information about both of the families that it was still considering, that the CASA had already contacted one of the families, and that SCF was willing to provide summaries of each home study that was ultimately selected for consideration by the adoption committee.

After hearing oral argument on the motion, the court, relying on its interpretation of *Williams*, ruled orally that "it is appropriate in this specific case, and I will say I will find in every adoptive case, that the home studies go either to the CASA or the attorney upon request." The court issued a written order that states:

"The court having heard arguments of the parties finds as follows:

"1.    The CASA cannot fulfill her duty to the child and the court without access to the adoptive home studies.

"2.    In this case and in every case, the proper selection of an adoptive resource is critical to the well being of the child.

"3.    The Legislature has mandated a high level of oversight by persons outside SCF by establishing the CASA program, and the Citizens Review Board Program. The Legislature has to have envisioned full disclosure to the child's advocates of all matters pertaining to the child's well being.

"4.    There is no evidence that limited disclosure of home studies reduces the number or quality of interested applicants or in any way impairs the agency's ability to find a permanent home for this or any child.

"5.    Input from the CASA regarding the strengths and weaknesses of selected families is critical to ensuring an appropriate choice is made.

"6.    The provisions of the juvenile code regarding use of discovery provide protection from further disclosure.

"7.    The court reviews the home study before the adoption is approved, and therefore, the home study of the selected resource would have to be disclosed to the CASA to avoid improper ex parte contact.

"8.   The child's need for an appropriate family outweighs the prospective adoptive family's need for total confidentiality.

"9.   The child and the CASA are parties to the case.

"10.   The child's attorney and the CASA are similarly situated with respect to this issue. The child's attorney impliedly joined the request to receive the home studies.

"NOW THEREFORE IT IS HEREBY ORDERED AS FOLLOWS:

"1.   SCF shall provide to the CASA and the child's attorney redacted copies of all home studies that are presented to the adoption selection committee. These studies shall be provided thirty days in advance of the committee meeting date.

"2.   SCF may redact names, addresses, employer of the applicants, and names of relatives. The nature of the employment and county and state of residence shall be disclosed. Some identifier should be attached to each study.

"3.   SCF shall allow the CASA and the child's attorney the ability to review (at SCF) all home studies received for these children. SCF may redact identifying information only. Copies need not be provided by SCF.

"4.   The CASA and the child's attorney shall not disclose any part of any home study to anyone and shall not copy it or distribute any copies provided to them."

On appeal, SCF argues that *Williams* was wrongly decided or, alternatively, that its holding should be limited to the facts of that case. It also contends that the confidentiality of home studies is paramount, that none of the potentially applicable exceptions to the confidentiality requirement for home studies applies to this case, and, especially, that the exceptions do not apply to home studies for families that are no longer being considered by SCF. SCF also makes several policy arguments regarding the impact on future applicants for adoption and on its ability to find appropriate homes for children in its care. The CASA, in response, relies on *Williams* and the trial court's reasoning and asserts that we should affirm the order of disclosure.

*Williams* is the starting point for our analysis. In *Williams,* the children's attorney made an oral motion to be allowed access to the home studies that had already been selected for consideration by the adoption committee. SCF, in response, raised almost the same arguments that it makes in this case. The trial court in *Williams* ordered:

" 'The children's attorney shall be provided a photocopy of the home studies of families SCF is taking to adoption committee for these children with identifying information (such as names and addresses) redacted and the children's attorney shall not redisclose the information contained therein, without prior consent of [SCF] or the Court.' " *Williams,* 168 Or App at 541.

SCF appealed, and we affirmed, rejecting several statutory, administrative, and policy arguments made by SCF. First, we examined SCF's argument that OEC 509 required confidentiality of home studies, even as to the children's attorney.[2] We rejected that argument, because OEC 509 addresses the examination of a public officer as to public records, and we reasoned that "the children did not seek to examine a public officer as to the home studies during a hearing[.]" *Williams,* 168 Or App at 548.

We then examined the argument that ORS 192.502 required confidentiality of home studies. That statute provides, in relevant part:

"The following public records are exempt from disclosure under ORS 192.410 to 192.505:

"* * * * *

"(2)  Information of a personal nature such as but not limited to that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy.

"* * * * *

---

[2] OEC 509 provides that "a public officer shall not be examined as to public records determined to be exempt from disclosure under ORS 192.501 to 192.505."

> "(4) Information submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure."

We concluded that, because the juvenile court's order provided for the redaction of identifying information, because the child's attorney was directed not to redisclose the information, and because the information in the home studies was integral to the adoption process, the exemptions under ORS 192.502(2) and (4) were inapplicable. The underpinning of that holding is that the disclosure to the children's attorney is qualitatively different from a disclosure to the "public." *Williams*, 168 Or App at 548.

Next, we considered SCF's argument in *Williams* that ORS 409.225 (1997) prohibited the disclosure ordered by the juvenile court. That statute provided that SCF shall not disclose the contents of documents that contain any confidential information "for purposes other than those directly connected with the administration of child welfare laws[.]" We read that provision in connection with ORS 419A.255, which provides that the attorney of record for a child is entitled to a copy of the court record, and with ORS 419B.035, which provides that the attorney of record for a child is entitled to child abuse reports. While those statutes address specific documents other than home studies, we reasoned that,

> "[t]o the extent, if any, that these statutes impose a duty on SCF to keep adoptive home studies confidential, the prohibition is against public disclosure 'for purposes other than those directly connected with the administration of child welfare laws,' and the exceptions in the statutes consistently allow disclosure to the children's attorney of record." *Williams*, 168 Or App at 549-50.

Finally, we considered SCF's contention that OAR 413-010-0040(1)(a) (1999) required the nondisclosure of adoption home studies. That rule provided that someone who has access to SCF records may look at, obtain copies, and make use of that information, except "information about adoptive placements and sealed adoption records." We noted that, while the rule might apply to home studies, the rule also

contained an exception for attorneys of record and that OAR 413-010-0000 made it clear that the rules governed only in cases where there was no court order requiring disclosure.[3] We concluded:

> "The legislature has left it for the juvenile court, rather than the attorney or SCF, to decide whether the adoption reports should be made available to the child's attorney at this point in the proceeding.

> "* * * The legislature has specifically authorized the appointment of counsel on behalf of dependent children in juvenile court. Implicit in that grant is the grant of discretionary authority to the juvenile court to provide information to counsel that will enable counsel to perform counsel's statutorily mandated role when an adoption is proposed. At the same time, the court is able to protect the interests of the proposed adoptive parents in the proper exercise of its discretion under that grant. Because the juvenile court in this case properly took those interests into account when it made its ruling, it did not abuse its discretion by ordering SCF to make its home studies available to counsel under these circumstances." *Williams*, 168 Or App at 550-51.

We adhere to our reasoning in *Williams*, and, consequently, we reject SCF's request that it be overruled. The foundation of our holding in *Williams* is that, where the legislature has expressly authorized a role or function to be performed in an adoption proceeding, it has implicitly provided that the information necessary to the performance of that function is to be supplied to the person that the legislature has designated to perform that role. In that light, we turn to the facts of this case.

■     There are three issues in this case that were not present in *Williams*. First, the court in this case ordered disclosure of the home studies to the CASA as well as to the attorney for the children. Second, the court ordered disclosure of a number of home studies that were no longer being considered by SCF. Finally, the court ordered disclosure of all home studies, including those that were not prepared by, or

---

[3] OAR 413-010-0000 (1999) provided that "the purpose of these rules is to describe the circumstances in which SOSCF may and may not disclose client information *without a court order.*" (Emphasis added.)

submitted for consideration by, SCF, but instead were submitted by private adoption agencies. We first discuss the issue of whether a CASA performs a function, as designated by the legislature, that implicitly requires the disclosure of home studies to it, much in the same way that that information is necessary to the role of an attorney for the children.

In *Williams*, we relied on the fact that many of the relevant statutes and rules contain an express grant of authority to the child's attorney of record to examine *and copy* certain records. 168 Or App at 549; *see, e.g.*, ORS 419A.255(1), (2);[4] ORS 419B.035(1)(c); OAR 413-010-0040(6), (7) (1999). In comparison, ORS 419A.255(1) provides that the CASA shall have *access to* juvenile court records for purposes of inspection, but ORS 419A.255(2) provides for the copying of the record only by attorneys, service providers, and school superintendents. That statute is at least some indication that the legislature distinguishes between the role of the CASAs and the role of attorneys. Also, ORS 419B.035 states that "attorneys of record for the child * * * in *any juvenile court*

---

[4] ORS 419A.255 provides, in part:

"(1) The clerk of the court shall keep a record of each case, including therein the summons and other process, the petition and all other papers in the nature of pleadings, motions, orders of the court and other papers filed with the court, but excluding reports and other material relating to the child's or youth's history and prognosis. The record of the case shall be withheld from public inspection but shall be open to inspection by the child or youth, parent, guardian, court appointed special advocate, surrogate or a person allowed to intervene in a proceeding involving the child or youth under ORS 109.119 (1), and their attorneys. The attorneys are entitled to copies of the record of the case.

"(2) Reports and other material relating to the child's or youth's history and prognosis are privileged and, except at the request of the child or youth, shall not be disclosed directly or indirectly to anyone other than the judge of the juvenile court, those acting under the judge's direction, service providers in the case and the attorneys of record for the child or youth or the child's or youth's parent, guardian, court appointed special advocate, surrogate or person allowed to intervene in a proceeding involving the child or youth under ORS 109.119(1). Reports and other material relating to a youth offender's history and prognosis in cases under ORS 419C.005 may be disclosed to the superintendent of the school district in which the youth offender resides. The service providers in the case, school superintendents and attorneys are entitled to examine and obtain copies of any reports or other material relating to the child's or youth's history and prognosis. Any service provider in the case, school superintendent or attorney who examines or obtains copies of such reports or materials is responsible for preserving their confidentiality and shall return the copies to the court upon the conclusion of the service provider's, superintendent's or attorney's involvement in the case."

*proceeding*" shall have access to child abuse reports, but that access to those same reports is granted to the CASA only in "juvenile court proceeding[s] in which it is alleged that a child has been subjected to child abuse or neglect." That language also suggests that, in general, the legislature sought to limit the right of access to otherwise confidential records, so that it would correspond to the role played by the person seeking disclosure in the procedure at hand.

The CASA's role is defined by statute and administrative rule. ORS 419A.170(2)[5] provides, in part:

"(2)   Subject to the direction of the court, the duties of the court appointed special advocate shall be to:

"(a)   *Investigate all relevant information about the case*;

"(b)   Advocate for the child, *ensuring that all relevant facts are brought before the court*;

"(c)   *Facilitate and negotiate* to ensure that the court, State Office for Services to Children and Families, if applicable, and the child's attorney, if any, fulfill their obligations to the child in a timely fashion; and

"(d)   Monitor all court orders to ensure compliance and to bring to the court's attention any change in circumstances that may require a modification of the court's order." (Emphasis added.)

Additionally, ORS 419A.170(7) and (8) provide:

"(7)   Upon presentation of the order of appointment by the court appointed special advocate, any agency, hospital, school organization, division, office or department of the state, doctor, nurse or other health care provider, psychologist, psychiatrist, police department or mental health clinic *shall permit the court appointed special advocate to inspect and copy any records relating to the child or children involved in the case*, without the consent of the child or children or parents.

"(8)   All records and information acquired or reviewed by a court appointed special advocate during the course of

---

[5] The order in this case was signed December 13, 2000, so the 1999 Oregon Revised Statutes are controlling.

official duties shall be deemed confidential under ORS 419A.255." (Emphasis added.)

When all of the statutes concerning the CASA are read together, we are persuaded that the legislature granted general authority to the CASA to perform specific functions for the children involved in a termination/adoption process. In keeping with our reasoning in *Williams*, we conclude that implicit in the legislature's grant of authority to the CASA is the grant of discretionary authority to the juvenile court to provide information to CASAs that is necessary for them to perform their statutorily mandated function. Insofar as confidentiality is concerned, the juvenile court is the "gatekeeper" in determining the extent of access to otherwise confidential records needed by the CASA. Thus, we hold that the juvenile court has authority to order SCF to disclose home studies to the CASA in this case to the extent necessary for her to perform her statutorily and administratively created functions.

■ The question then becomes whether the trial court exceeded its discretion in requiring the level of disclosure that it ordered here. Under *Williams*, the boundaries on the court's exercise of discretion depend on the amount of information that is required for CASAs to perform the functions that the legislature intended them to perform. The amount of information needed, and thus the proper exercise of discretion, may vary from case to case. The statutory duties of the CASA are, among other things, "to investigate all relevant information about the case," to ensure "that all relevant facts are brought before the court," and to monitor the process for compliance with the law. ORS 419A.170. Thus, in general, a CASA has the duty to function as an advocate for the child and, in that role, "stands in the shoes" of the child. As well, the CASA fulfills a monitoring function on behalf of the child regarding the court, the attorneys, and SCF.

In addition to the general duties listed in ORS 419A.170, the statutes and the administrative rules establish a specific role for the CASA in adoption proceedings. First, OAR 413-120-0040(4) provides that the CASA may provide information to the child's social worker about the kind of

adoptive family that the CASA thinks is the most suitable. Additionally, OAR 413-120-0035 provides that the CASA may appear, by invitation, at the adoption committee meeting to present information about the child. Finally, ORS 419B.476 authorizes the CASA to be involved in juvenile court hearings where, among other things, the court has the power to "review efforts made to develop the case plan for the child including, but not limited to, the identification and the selection of a suitable adoptive placement for the child." ORS 419B.476(9)(c) (1999).

Some of the most important of those grants of authority are the authority to provide information to the adoption committee and the authority to "monitor all court orders to ensure compliance." In this case, the juvenile court ordered SCF to conduct a "continued search for appropriate adoptive parents for [children]." *See also* ORS 419B.498(1); ORS 419B.527(1)(b) (providing for the termination of parental rights and authorizing the adoption of children after termination occurs). Under ORS 419A.170, the CASA is granted the authority to monitor the execution of such orders by SCF. In order to perform its role adequately, the CASA must have information about the families who are going to be considered by the adoption committee. Only with that kind of information can the CASA provide meaningful input to the committee. Similarly, such information will permit a CASA to meaningfully monitor SCF's progress toward the court-ordered goal of finding a suitable adoptive home. Because the performance of the statutorily mandated role requires access to the information contained in home studies, a court does not exceed its discretion by ordering the disclosure of that information, once SCF has submitted it to the adoption committee for consideration.[6]

In contrast to the specific grants of authority and duties discussed above, we are unaware of any statute or rule

---

[6] Whether a summary of the study, as distinguished from the home study itself, will suffice for the above purposes is within the trial court's discretion. That discretion could be appropriately exercised by the court by comparing the information in the home study with the information in the summary in light of the CASA's "need to know."

that grants authority to the CASA to participate in the process of selecting which home studies SCF will submit to the adoption committee. To the contrary, OAR 413-120-0020,[7] OAR 413-120-0030,[8] and OAR 413-120-0040[9] all contemplate that the SCF worker, in conjunction with other SCF personnel will make the decision about which study or studies to submit to the committee. Also, we are unaware of any statutory or administrative mechanism for challenging SCF's process and decision about which studies to submit.[10]

To reiterate a principle from *Williams*, a trial court acts within its discretion when its grant of disclosure "provide[s] information to counsel that will enable counsel to perform counsel's statutorily mandated role when an adoption is proposed [and] at the same time * * * protect[s] the interest of the proposed adoptive parents." *Williams*, 168 Or App at 550-51. We apply a similar principle regarding a CASA's monitoring function. There is nothing inherent in a CASA's role as defined by statute that requires involvement in the initial screening stage of the process because of the opportunity to have input at a later time in the adoption process. In other words, a CASA, through monitoring of the submissions to the committee, is able to ensure that SCF is recruiting suitable families. Moreover, a CASA's need for information about families not submitted to committee is not apparent because a CASA can perform a monitoring function effectively without that information. In addition, the privacy

---

[7] OAR 413-120-0020 provides that "[w]hen a child is determined to be appropriate for a legal risk adoptive placement or a child is legally free for adoption, the child's worker shall refer the child to the appropriate adoption committee for review."

[8] OAR 413-120-0030(2) provides, in part, that "[t]he child's worker shall refer the child and potential adoptive homes to the appropriate adoption committee[.]"

[9] OAR 413-120-0040 provides, in part, that "the child's worker shall select appropriate families for committee from completed home studies. * * * The child's worker shall review and select for presentation a sufficient number of appropriate families in the order the home studies have been date stamped[.]"

[10] OAR 413-120-0060 (2000) provided for review of the committee's decision after the fact, and did not expressly provide limits on who could request review, as does the current version of that rule. Current OAR 413-120-0060 (2001), which became effective after this case was heard below, provides that the CASA and other enumerated people can bring challenges to the committee's ultimate selection in a limited number of situations. However, we find no statute or rule that allows a before-the-fact challenge to the caseworker's submissions to committee.

interests of families who are no longer being considered by SCF are of significant weight, given the confidential information contained in a home study.[11] A balancing of the CASA's interests with those of the families leads us to conclude that the disclosure to a CASA of home studies that are not submitted to the adoption committee is not justified by the CASA's statutory duties or role. To the extent that the juvenile court's order requires SCF to disclose home studies that have not been submitted to the committee, we hold that the court exceeded its discretion.

The dissent would hold that all home studies submitted to SCF, whether submitted to the adoption committee or not, must be made available to the court and that the court could then decide to allow a CASA to have access to them. It relies on the language of ORS 419B.449(3) and other statutory grants of authority to the juvenile court in support of its assertion. It makes much of the obligation of the court to "consider the efforts made to develop the concurrent case plan, including, but not limited to, *identification and selection of a suitable adoptive placement for the child*," ORS 419B.449(3), and of its authority to review "efforts made to develop the concurrent case plan including, but not limited to, *identification and selection of a suitable adoptive placement for the child*." 182 Or App at 420 (Armstrong, J., dissenting) (emphasis added). It concludes that, "without full access to the home studies of potential adoptive families, the juvenile court's hands are tied, and its authority to review SCF's 'identification and selection of a suitable adoptive placement' is illusory." 182 Or App at 420 (Armstrong, J., dissenting).

With respect, the dissent misunderstands the court's role and authority under the above statutes, which, in turn, causes it to expand the role of a CASA beyond that contemplated by the legislature. The beginning point is the language

---

[11] Home studies that comply with OAR 413-120-0310 will contain information regarding the family's living conditions, the condition and safety of their home, the relationships between all household members, the lifestyle and personal history of each proposed adoptive parent and other household members, the duration and stability of the parent's marriage or relationship, criminal history information, information on the family's financial stability, and each family member's physical and mental health. OAR 413-120-0310.

of ORS 419B.449(3) and its mandate to the court to "consider the efforts made by SCF to identify and select a *suitable* adoptive placement." (Emphasis added.) The word "suitable" means "adapted to a use or purpose, fit, appropriate from the viewpoint of propriety, convenience or fitness, having the necessary qualifications, meeting requirements." *Webster's Third New Int'l Dictionary*, 2286 (unabridged ed 1993). In context, the word "suitable" implies that more than one prospective adoptive home could be "suitable." Significantly, the statute does not require the court to determine that SCF has recruited, identified, or selected the "most suitable" placement. Nothing on the face of the statute charges the court with the task of making a *comparative judgment* among "suitable" adoptive homes.

The context of ORS 419B.449(3) confirms the above observations. ORS 419B.192 instructs the court to consider certain factors, enumerated in the statute, in deciding the placement of a child after an initial evidentiary hearing. The statute provides a preference for relatives of the child or those who have a child-parent relationship with the child. Significantly, the statute does not require *the court* to make a determination about which placement is the most appropriate. Rather, it directs SCF to "consider * * * which person has the closest existing personal relationship with the child if more than one person requests to have the child placed with them." ORS 419B.192(2)(d). Moreover, under ORS 419B.337, after a child has been committed to the custody of SCF, the court is authorized to "specify the particular type of care, supervision or services" to be provided to the child, but "the actual planning and provision of such care, supervision or services shall be the responsibility of" SCF. Likewise, the court, under ORS 419B.349,

> "may direct the department to place the child in foster care, residential care, group care or some other specific type of residential placement, but unless otherwise required by law, *the court may not direct a specific placement*. The actual planning and placement of the child is the responsibility of the department." (Emphasis added.)

Also, ORS 419B.476, in regard to permanency hearings, defines the role of the court as determining whether SCF "has made reasonable efforts to place the child in a

timely manner" and "to review the efforts made by the department to develop the concurrent permanent plan, including but not limited to identification and selection of a *suitable* adoptive placement for the child." ORS 419B.476(9)(e) (1999). ORS 419B.529 authorizes the court to enter a judgment of adoption, after the termination of parental rights has occurred and SCF "has completed a home study * * * that finds the prospective parent is *suitable to adopt* the child." (Emphasis added.) In ORS chapter 109, which governs adoptions and is applicable to SCF adoptions under ORS 419B.529(3), the court is required to ensure that the adoptive petitioners/parents have a home study that demonstrates "that the petitioner *meet the minimum standards* for adoptive homes." ORS 109.309(3)(a)(C). In contrast to the court's review function, SCF is charged in ORS 109.309(7)(a) with investigating and filing a placement report containing "evidence * * * concerning the *suitability* of the proposed adoption." (Emphasis added.) Finally, under ORS 109.350, the court's role is to determine "the identity and relations of the persons, that the petitioner is of *sufficient ability* to bring up the child and furnish *suitable* nurture and education, having reference to the degree and condition of the parents, * * * and that it is *fit and proper* that such adoption be effected." (Emphasis added.)

When all of those statutes are read together with ORS 419B.449(3), they lead to only one conclusion. The statutory scheme charges the agency with the administration of the various statutory powers granted to it, and the court functions only in a review capacity over the decisions made by the agency. *See, e.g.*, ORS 419B.337; ORS 419B.349. Pursuant to its authority, SCF has promulgated rules that regulate the exercise of its authority. *See, e.g.*, OAR 413-120-0040(2) (regulating how an SCF worker shall review and select prospective adoptive families for presentation to the adoption committee). There is no indication in any of the above statutes that the legislature intended the court to become involved in the agency's decision-making process that leads to the selection of a foster home or residential placement of a child in its legal custody. Similarly, there is no suggestion that the legislature intended the court to determine which families should be considered by the adoption

committee. Instead, the statutes indicate that the court's authority is limited to reviewing the adoptive placement for "suitability" in the same way it reviews the agency's other decisions regarding children in its custody. That understanding leads to the conclusion that access to home studies not submitted to the adoption committee is not required for the court to perform its review functions.

The dissent says that such a limitation on the court's authority makes its authority illusory. We disagree. In making a decision about whether to approve an adoption, the court and the CASA, under our interpretation, have before them the same information that was before the adoption committee when it made its decision. In light of the legislatively enacted division of labor between the agency and the court we perceive no reason why the legislature would have desired the court or the CASA to have more information in the exercise of their review function than the entity making the initial decision about the suitability of a particular adoptive home.

■ Finally, SCF argues that some of the adoptive families whose home studies are encompassed within the terms of the trial court's order are not families that SCF recruited but instead completed and submitted their home studies through private agencies. It argues that the disclosure of such home studies should be evaluated differently from the disclosure of SCF-prepared home studies. However, it is unclear from the record whether the home studies that were being considered for submission to the committee in this case are privately prepared home studies.[12] When SCF does make its final decision about which home studies to submit, its selection may not include any privately prepared home studies. Under our holding today, that would eliminate the prospect of the disclosure of any privately prepared studies. In the event that SCF elects to submit a privately prepared home study to the adoption committee, the trial court should exercise its "gate keeping function" consistently with the general principles we have announced here and in *Williams*. Any determination

---

[12] It appears from the record that both families still under consideration had been in direct contact with SCF, indicating that they were not families working with private agencies.

made by the court will necessarily have to be on a case-by-case basis, consistently with the applicable statutes and administrative rules, and will balance the right to privacy with the "need to know" as discussed in *Williams*.

To summarize, the juvenile court has authority to order disclosure to a CASA of the information that is necessary for the CASA to perform his or her statutory functions. The CASA is entitled to access to the information in those home studies that are actually submitted and considered by the adoption committee. Because the CASA has no authority or duty to intervene at the initial screening phase done by SCF, disclosure of home studies that SCF has decided not to submit to the adoption committee is not required. The triggering events for disclosure are a request by CASA, and the decision by SCF to submit a home study or studies to the adoption committee for consideration. In this case, because CASA has moved for disclosure, when SCF submits a home study or studies to the committee it must notify the CASA of that fact[13] and deliver a copy of the home study or studies to the CASA, or apply to the court for permission to instead provide a summary. On remand, the juvenile court is to apply those principles once SCF decides which home studies to submit to the adoption committee.

Reversed and remanded.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

I agree with the majority that our holding in *State ex rel SOSCF v. Williams*, 168 Or App 538, 7 P3d 655 (2000), *rev dismissed* 333 Or 596 (2002), was correct and that the juvenile court had authority to require the State Office for Services to Children and Families (SCF) to provide court-appointed special advocates (CASAs) and the children's attorney with redacted copies of home studies of potential adoptive families who are referred by the adoption counselor to the adoption committee. I would hold further, however, that the juvenile court has the authority to order disclosure to the children's CASA of redacted copies of home studies of

---

[13] The trial court imposed a similar notice requirement. In our view, that requirement was a proper exercise of its discretion.

potential adoptive families who are not selected by the adoption worker for submission to the committee. The court can exercise its discretion to determine that the disclosure is necessary for the court to review SCF's identification and selection of a suitable adoptive placement. Accordingly, I concur in the majority's holding that the case must be remanded but dissent from its determination that only home studies of families that are submitted to the adoption committee must be disclosed.

In 1999, the legislature amended ORS 419B.449 and ORS 419B.476 to add juvenile court oversight to SCF's "identification and selection" of suitable adoptive families. Or Laws 1999, ch 568, §§ 1, 2. Those amendments apply to this case. The court is now required, under ORS 419B.449(3), in making findings that a child is to continue in substitute care, to "consider the efforts made to develop the concurrent case plan, including, but not limited to, *identification and selection of a suitable adoptive placement for the child when adoption is the concurrent case plan.*" (Emphasis added.) Further, under ORS 419B.449(4), the court may order SCF "to consider additional information in developing the case plan or concurrent case plan." Under ORS 419B.476(9)(a) (1999), in conducting a permanency hearing the court may order SCF "to develop or expand a case plan, concurrent case plan or case progress report * * *[.]" And now, after the 1999 amendments, ORS 419B.476(9)(e) (1999) authorizes the court to "[r]eview efforts made to develop the concurrent case plan including, but not limited to, identification and selection of a suitable adoptive placement for the child." Thus, in both review and permanency hearings, the court is authorized to oversee SCF's identification and selection of a suitable adoptive placement.

Without full access to the home studies of potential adoptive families, the juvenile court's hands are tied, and its authority to review SCF's "identification and selection of a suitable adoptive placement" is illusory. As the majority so aptly states, "where the legislature has expressly authorized a role or function to be performed in an adoption proceeding, it has implicitly provided that the information necessary to the performance of that function is to be supplied to the person that the legislature has designated to perform that role."

182 Or App at 409. The majority does not dispute that the juvenile court may itself examine the home studies of potential adoptive families who are *not* selected by SCF for referral to the adoption committee. Inexplicably, however, the majority fails to address why ORS 419B.449 and ORS 419B.476 do not require that we accord greater discretion to the juvenile court to authorize disclosure of that same information to the CASAs who are assisting the court.

Perhaps the majority's result hinges on its reasoning that the role of the children's CASA does not expressly encompass review of SCF's "identification and selection" of adoptive families. I reject that reasoning. As the majority acknowledges, a key function of the CASA, an appointee of the court, includes investigating all relevant information about the case and ensuring that all relevant facts are brought before the court. ORS 419A.170. It does not matter that no rule or statute specifically authorizes the CASAs to participate in the process of selecting families to be submitted to the adoption committee. A CASA's duties run to the juvenile court and the child. To the extent that the juvenile court determines that disclosure of the home studies to the CASA would serve to assist *the court* in performing *its* functions under ORS 419B.449 and 419B.476, that authorization is sufficient.

I do not contend that the CASAs themselves can usurp SCF's role of selecting potential adoptive families to be referred to the adoption committee. But I believe that the juvenile court must be able to examine home studies in order to fulfill its statutory obligation to oversee the identification and selection of potential adoptive families by SCF and that the CASA, in assisting the court, can carry out her functions to investigate all relevant information about a case, and to ensure that all relevant facts are brought before the court, only if the court has discretion to give her access to the same home studies that the court determines that it must review.

Further, I reject the majority's suggestion that the juvenile court's discretion to review home studies should be guided by balancing the potential adoptive family's "right to privacy" against the CASA's "right to know." First, although home studies are not subject to disclosure under the Public

Records Law, ORS 192.502(4), SCF has not provided authority, and I am not persuaded, that adoptive home studies must be kept confidential from the court. Second, assuming that there is a right to privacy in home studies, that right is not implicated by the CASA's review of documents that have identifying information deleted. The only factor guiding the court's discretion in ordering disclosure to the CASA of redacted home studies should be whether disclosure is necessary to the CASA's function of assisting the court.

Because the juvenile court made a blanket determination that the home studies of all potential adoptive families must be disclosed to the CASA, and, because it made no determination as to which home studies had to be disclosed to the CASA in this case to enable the CASA to assist the court, I would remand the case for reconsideration by the juvenile court. Accordingly, I concur in the majority's holding that a remand is necessary, but I would limit the scope of the remand to a reconsideration by the juvenile court of whether all of the home studies, fully redacted, should be disclosed to the CASA or whether only some of the studies need be disclosed in order for the CASA to carry out her function of assisting the court.